**PELTON GRAHAM LLC**
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.peltongraham.com

*Attorneys for Plaintiffs and the putative*
*FLSA Collective and Class*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **LORETTA LEON, RITA TRAHAN, and ROBBIN MILES, Individually and on Behalf of All Others Similarly Situated,**<br><br>     **Plaintiffs,**<br><br>**-against-**<br><br>**SALRON DINER ASSOCIATES, INC. d/b/a SHERWOOD DINER, GEORGE HADJIZACHARIAS, MICHELLE HADJIZACHARIAS, and PETER SARKA, Jointly and Severally,**<br><br>     **Defendants.** | **CLASS & COLLECTIVE**<br>**ACTION COMPLAINT**<br><br><br>**Jury Trial Demanded** |

Plaintiffs Loretta Leon, Rita Trahan, and Robbin Miles (the "Plaintiffs"), individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

1

**NATURE OF THE ACTION**

1.      Plaintiffs are former servers at Defendants' diner located in Lawrence, New York. For their work, throughout the relevant time period, Plaintiffs were not paid minimum wages for all hours worked and were not paid overtime premiums for hours worked over forty (40) in a given workweek.

2.      Plaintiffs bring this action to recover unpaid minimum wages and overtime premium pay owed to them pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq.* Plaintiffs also bring claims for unpaid spread-of-hours premiums, unlawfully withheld gratuities, and for failure to provide proper wage notices and wage statement violations pursuant to NYLL §§ 190 *et seq.* and the supporting regulations.

3.      Plaintiffs bring their FLSA claims on behalf of themselves and all other similarly situated employees of Defendants and their NYLL claims on behalf of themselves and a Federal Rule of Civil Procedure 23 class of all non-management employees working for Defendants in New York.

**JURISDICTION AND VENUE**

4.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants' business is located in this district and a substantial part of the events or omissions giving rise to

the claims occurred in this district.

6.       This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

**Plaintiffs:**

7.       Plaintiff Loretta Leon ("Leon") was, at all relevant times, an adult individual residing in Kings County, New York.

8.       Plaintiff Rita Trahan ("Trahan") was, at all relevant times, an adult individual residing in Queens County, New York.

9.       Plaintiff Robbin Miles ("Miles") was, at all relevant times, and individual residing in Queens County, New York.

10.     Throughout the relevant time period, Plaintiffs performed work for Defendants at "Sherwood Diner," located at 311 Rockaway Turnpike, Lawrence, New York 11559.

11.     Plaintiffs consent in writing to be parties to this action, pursuant to 29 U.S.C. § 216(b), and their consent forms are attached hereto.

**Defendants:**

12.     Salron Diner Associates, Inc. is an active New York Corporation doing business as "Sherwood Diner" ("Sherwood Diner" or the "Corporate Defendant") with its principal place of business at 311 Rockaway Turnpike, Lawrence, New York 11559.

13.     Defendant George Hadjizacharias ("Hadjizacharias") is an owner and operator of the Corporate Defendant.

14.     Defendant Michelle Hadjizacharias ("M. Hadjizacharias") is an owner and operator

of the Corporate Defendant.

15.     Defendant <u>Peter Sarka</u> ("Sarka" and, collectively with Hadjizacharias and M.Hadjizacharias, the "Individual Defendants" and, collectively with the Corporate Defendants, the "Defendants") is an owner and operator of the Corporate Defendant.

16.     The Individual Defendants maintained operational control over the Corporate Defendant and jointly managed the Sherwood Diner by determining the wages and compensation of employees, establishing the schedule of employees, maintaining employee records, and through possessing the authority to hire and fire employees, including Plaintiffs.

17.     The Individual Defendants jointly employed Plaintiffs, and all similarly situated employees, by acting in the interest of each other with respect to the employees, paying the employees by the same methods, and sharing control over the employees.

18.     The Individual Defendants participated in the day-to-day operations of the Corporate Defendants and acted intentionally in their direction and control of Plaintiffs and the Defendants' other similarly situated employees, and are each "employers" pursuant to the FLSA, 29 U.S.C. § 203(d), 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and are jointly and severally liable with the Corporate Defendants.

19.     At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). At all relevant times, Defendants employed, and/or continue to jointly employ, Plaintiffs and each of the Collective Action members within the meaning of the FLSA.

20.     At all relevant times, Plaintiffs, the opt-in plaintiffs and the Class Members were

employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

21.     Upon information and belief, at all relevant times, the Corporate Defendant has had gross revenues in excess of $500,000.00.

## FLSA COLLECTIVE ACTION ALLEGATIONS

22.     Pursuant to 29 U.S.C. §§ 206, 207 & 216(b), Plaintiffs bring their First and Second Causes of Action as a collective action under the FLSA on behalf of themselves and the following collective:

> All persons employed by Defendants at any time since August 24, 2015 and through the entry of judgment in this case (the "Collective Action Period") who worked as non-management employees at Sherwood Diner (the "Collective Action Members").

23.     A collective action is appropriate in this circumstance because Plaintiffs and the Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policies of failing to pay minimum wage for all hours worked and failing to pay overtime premiums for work performed in excess of forty (40) hours each week.  As a result of these policies, Plaintiffs and the Collective Action Members did not receive the legally-required minimum wages for all hours worked and overtime premium payments for all hours worked in excess of forty (40) hours per week.

24.     Plaintiffs and the Collective Action Members have substantially similar job duties and are paid pursuant to a similar, if not the same, payment structure.

## RULE 23 CLASS ACTION ALLEGATIONS

25.     Pursuant to the NYLL, Plaintiffs bring their Third through Eighth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following class:

> All persons employed by Defendants at any time since August 24, 2012 and through the entry of judgment in this case (the "Class Period") who worked as non-management employees at Sherwood Diner (the "Class Members").

26.     The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Fed. R. Civ. P. 23.

27.     The Class Members are so numerous that joinder of all members is impracticable.

28.     Upon information and belief, there are well in excess of forty (40) Class Members.

29.     The questions of law and fact common to the Class predominate over any questions solely affecting the individual members of the Class. These common questions include, but are not limited to:

a.   whether Defendants employed Plaintiffs and the Class Members within the meaning of the NYLL;

b.   whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the Class Members;

c.   whether Defendants failed and/or refused to pay Plaintiffs and the Class Members minimum wage for all hours worked;

d.   whether the Defendants automatically deducted from Plaintiffs and Class Members' hours worked for a lunch break, regardless of whether or not a lunch break was taken;

e.   whether Defendants failed and/or refused to pay Plaintiffs and the Class Members overtime premiums for hours worked in excess of forty (40) hours

6

per workweek;

f.   whether Defendants failed to pay Plaintiffs and the Class Members an extra
     hour of minimum wage when working shifts or split shifts in excess of ten (10)
     hours;

g.   whether Defendants failed to provide Plaintiffs and the Class Members with a
     proper statement of wages with every wage payment as required by the NYLL;

h.   whether Defendants failed to provide a wage notice to Plaintiffs and Class
     Members at the beginning of their employment and/or on February 1 of each
     year as required by the NYLL;

i.   whether Defendants illegally retained gratuities left by customers and failed to
     pay all such gratuities to Plaintiffs and the Class Members;

j.   whether Defendants' failure to properly pay Plaintiffs and the Class Members
     lacked a good faith basis; and

k.   whether Defendants are liable for all damages claimed hereunder, including but
     not limited to compensatory damages, liquidated damages, interest, costs and
     disbursements and attorneys' fees.

30.   <u>Plaintiffs' claims are typical of the Class Members' claims</u>. Plaintiffs, like all Class
Members, are restaurant employees of Defendants who worked for Defendants pursuant to their
corporate policies. Plaintiffs, like all Class Members, were, *inter alia*, paid less than the statutory
minimum wage for all hours worked, were not paid overtime premium pay for hours worked over
forty (40) hours in a given workweek, were not paid spread-of-hours premiums when working a
shift and/or split shift of ten (10) or more hours, were not paid all gratuities to which they were

7

entitled, had unlawful deductions from their wages for meals not provided to them, and did not receive proper wage statements and wage notices. If Defendants are liable to Plaintiffs for the claims enumerated in this Complaint, they are also liable to all Class Members.

31.     Plaintiffs and their Counsel will fairly and adequately represent the Class. There are no conflicts between Plaintiffs and the Class Members, and Plaintiffs bring this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover their own damages.

32.     Plaintiffs' counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

33.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation.

34.     Defendants are sophisticated parties with substantial resources. The individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

35.     The individual members of the Class have no interest or capacity to bring separate actions; Plaintiffs are unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## STATEMENT OF FACTS

### Sherwood Diner

36.     Throughout the relevant time period, Defendants have been in the restaurant business.

37.     Upon information and belief, the Individual Defendants have owned and operated

Sherwood Diner through the Corporate Defendant since in or around 1967.

38. Salron Diner Associates, Inc. was registered with the New York State Department of State, Division of Corporations on March 10, 1967.

39. In the corporate filings with the New York State Department of State, Division of Corporations, Defendant G. Hadjizacharis is listed as the Chief Executive Officer and Principal Executive Officer for Salron Diner Associates, Inc.

40. Upon information and belief, Defendants M. Hadjizacharis and Sarka are a constant presence in the diner and take an active role in ensuring that the restaurant is run in accordance with their procedures and policies.

41. Upon information and belief, at all times relevant, Defendant Hadjizacharis, in conjunction with the other Individual Defendants, has had power over payroll and personnel decisions at Sherwood Diner, including the power to hire and fire employees, set their wages, retain time and/or wage records, and otherwise control the terms and conditions of their employment.

**Plaintiffs' Work for Defendants**

42. **Plaintiff Leon** was employed by Defendants as a server at Sherwood Diner from in or around March 2011 through in or around March 2018 and then again from in or around June 2018 to July 22, 2018 (the "Leon Employment Period").

43. From the beginning of the Leon Employment Period to in or around June 2016, Plaintiff Leon was typically scheduled to work four (4) days per week, but often worked additional shifts on holidays and to cover for absent employees. Although her schedule varied throughout her employment, Plaintiff Leon typically worked the night shift Thursday and Friday from

approximately 5:00 pm to approximately 12:00 am, and worked double shifts on Saturday and Sunday from approximately 10:00 a.m. to in or around 11:00 p.m., and often times later, for a total of forty (40) to forty-two (42) hours per week. Beginning in or around June 2016, Leon typically worked the same days but with a reduced number of hours on Saturday and Sunday, such that she worked on Saturday and Sunday from approximately 10:00 a.m. to approximately 5:00 p.m., and often times later, for a total of approximately twenty-eight to thirty (28-30) hours per week.

44.     For her work, from the beginning of the Leon Employment Period to in or around January 2017, Leon was paid a base tipped credit minimum wage of five dollars ($5.00) per hour plus tips. From in or around January 2017 until the end of the Leon Employment Period, Leon was paid a base tipped credit minimum wage of seven dollars and fifty cents ($7.50) per hour plus tips. Despite the fact that Plaintiff Leon worked between approximately twenty-eight and forty-two (28 -42) hours per week and registered her hours through the point of sale (POS) system in the diner, Defendants would typically pay her for fewer hours that the total number of hours she actually worked. Thus, Plaintiff Leon typically did not receive any wages for several hours of work each week.

45.     Throughout her entire employment period Plaintiff Leon had to clock in and out of the point of sale system in the diner.

46.     Plaintiff Leon observed Defendant Hadjizacharias throw away credit card receipts so that, upon information and belief, staff members could not know the exact amount of tip left by patrons and so that he could either state that no tip was left or indicate a lesser amount was provided by the customers in order to retain a portion of the tip for the Defendants.

47.     Plaintiff Leon alleges that on July 22, 2018 she complained to Defendant

Hadjizacharis regarding the number of tables that she worked that shift that left credit card tips. During the relevant time period, Defendant Hadjizacharis kept a log of credit card payments on a sheet of paper that is kept at all times by the cash register. Plaintiff Leon alleges she served a minimum of thirteen (13) tables on that day but, on the tip sheet, Hadjizacharis had only acknowledged seven (7) tables. Surprised by the number of tables that Hadjizacharis claimed had left no tips for her, Leon requested to see the receipts for herself and was told by Hadjizacharis that she is not allowed. At the end of her shift that day, Defendant Hadjizacharis told Plaintiff Leon "I don't like what you did today. I am going to give you your (expletive) money but never come back here again."

48.     Throughout her employment period, Plaintiff Leon received from Defendant Hadjizacharis a check that she was not permitted to deposit into her bank account but was required by Defendant Hadjizacharis to sign over to him and cash out at the register in the diner. If there was not enough cash in the register to complete the total amount, Plaintiff Leon either had to wait at the diner or return on another day to be paid.  The paystub did not reflect the actual number of hours worked by Plaintiff Leon or the correct amount of tips.

49.     **Plaintiff Trahan** was employed by Defendants as a server at Sherwood Diner from on or about January 19, 2017 to in or around  November 2017 (the "Trahan Employment Period").

50.     Throughout the Trahan Employment Period, Plaintiff Trahan was typically scheduled to work four (4) or five (5) days per week, with most Mondays and Tuesdays off. Plaintiff Trahan typically worked the following schedule: Wednesdays, Thursdays, and Fridays from approximately 5:00 pm to approximately 11:00 pm and often times later until 12:00 am; and Saturdays and Sundays, from approximately 8:00 am to approximately 9:00 pm, and often times

11

later until 10:00 pm, for a total of approximately forty-four to forty-nine (44-49) hours per week, and sometimes more.

51.     For her work, Plaintiff Trahan was paid on an hourly basis at the tipped minimum wage of seven dollars and fifty cents ($7.50) per hour plus tips. Despite the fact that Plaintiff Trahan worked between approximately forty-four to forty-nine (44-49) hours per week and registered her hours through the point of sale (POS) system in the diner, Defendants would typically pay her for fewer hours than the total number of hours she actually worked. Thus, Plaintiff Trahan typically did not receive any wages for several hours of work each week.

52.     Plaintiff Trahan was not paid any wages and not permitted to keep any tips for the first three (3) days of her employment at the diner. She was told by Defendant Hadjizacharis that she would not be paid for these days since she was "training."

53.     On one occasion, a frequent patron informed Trahan that they had left her a thirty-dollar ($30.00) tip on their credit card. Plaintiff Trahan went to the register area to confirm and was told by Hadjizacharis that the patron had only left a ten-dollar ($10.00) tip on the card. Plaintiff Trahan searched the garbage receptacle and found the receipt in question crumpled up and confirmed the thirty-dollar ($30.00) tip, which she brought to Hadjizacharis' attention and he responded "go away you (expletive) idiot."

54.     Throughout the Trahan Employment Period, Plaintiff Trahan received from Defendant Hadjizacharis a check that she was not permitted to deposit into her bank account but was required by Defendant Hadjizacharis to sign over to him and cash out at the register in the diner. If there was not enough cash in the register to complete the total amount, Plaintiff Trahan either had to wait at the diner or return on another day to be paid. The paystub did not reflect the

actual number of hours worked by Plaintiff Trahan or the correct amount of tips that she earned for the week.

55.     **Plaintiff Miles** was employed by Defendants as a server at Sherwood Diner from in or around 2003 to on or about February 14, 2018 (the "Miles Employment Period").

56.     From in or around 2012 through in or around 2014, Plaintiff Miles typically worked five (5) days per week, with most Mondays and Wednesdays off. Although her schedule varied during the aforementioned time period, Plaintiff Miles typically worked: Tuesdays and Thursdays, from approximately 5:00 pm to approximately 2:00 am; Friday and Saturday, from either approximately 11:00 am to approximately 9:00 pm or from approximately 6:00 pm to approximately 4:00 am; and Sundays from approximately 9:00 am to approximately 11:00 pm, for a total of approximately fifty-two (52) hours per week.  From in or around October 2014 to the end of the Miles Employment Period, Plaintiff Miles worked an "on-call" schedule that would vary each week; the minimum number of hours Plaintiff Miles would work is a double shift of approximately twelve to thirteen (12-13) hours and the maximum was approximately sixty (60) hours in a week. During the month of December 2016, Plaintiff Miles worked the following schedule: Sunday from approximately 10:00 am to approximately 11:00 pm, and four (4) shifts from approximately 11:00 am to approximately 9:00 pm, for a total of approximately sixty-three (63) hours per week.

57.     From in or around 2012 until in or around January 2017, for her work, Plaintiff Miles was paid on an hourly basis at the tip-credit minimum wage of five dollars ($5.00) per hour plus tips. From in or around January 2017 until the end of the Miles Employment Period, Plaintiff Miles was paid seven dollars and fifty cents ($7.50) per hour plus tips. Despite the fact that Plaintiff

Miles worked between approximately twelve to sixty hours (12-60) hours per week and registered her hours by clocking in and out in the diner, Defendants would typically pay her for fewer hours than the total number of hours she actually worked. Thus, Plaintiff Miles typically did not receive any wages for several hours of work each week.

58.    From in or around 2012 to in or around 2013, Plaintiff Miles had to clock in and out with a time card. From in or around 2013 to the end of the Miles Employment Period, Plaintiff Miles had to clock in and out of the point of sale (POS) system in the diner.

59.    Throughout the relevant Period, Plaintiff Miles received from Defendant Hadjizacharis a check that she was not permitted to deposit in her bank account but was instructed/obliged by Defendant Hadjizacharis to sign over to him and cash out at the register in the diner. If there was not enough cash in the register to provide the total amount of the paycheck, Plaintiff Miles either had to wait at the diner until there was sufficient cash or return on another day to be paid. The paystub did not reflect the actual number of hours worked or the correct amount of tips received by Plaintiff Miles during the week.

60.    Plaintiff Miles alleges that on one occasion in or around January 2018 she expressed the desire to want to deposit her check into her bank account after she was informed by Defendant Hadjizacharis that there was not enough money in the register to cash her check. When Plaintiff Miles informed Defendant Hadjizacharis of her intention to deposit her check he became very upset and began to scream and curse at her in the diner.

61.    In addition, Defendants would automatically deduct one (1) hour as a lunch break for each day that Plaintiffs and Class Members worked, notwithstanding the fact that Plaintiffs and Class Members frequently were unable to take an uninterrupted lunch break and only certain back-

of-the-house employees would at times be permitted to take a full hour. Consequently, through Defendants' automatic adjustments and deductions to their employees' time worked, Defendants failed to credit Plaintiffs and Class Members for all hours worked each week.

62.    Throughout their respective employment periods, Plaintiffs have not been paid the legally-required minimum wages for all hours worked and have not been paid overtime premiums of one and one-half (1.5) times their regular hourly rate for hours worked over forty (40) each workweek.

63.    Throughout their respective employment periods, although Plaintiffs have typically worked a spread of more than ten (10) hours in a single shift and/or split shifts, they have not received spread-of-hours premiums equal to an additional hour at the applicable minimum wage for such days.

64.    Throughout their respective employment periods, Plaintiffs have not been provided with wage notices at hiring, by February 1 of each year, or proper wage statements with their wage payments each week.

65.    Throughout the respective employment periods, Plaintiffs have not been paid all gratuities left for them by Defendants' customers, on account of Defendant retaining a certain portion of such gratuities paid by credit card.

**Defendants' Unlawful Corporate Policies**

66.    Plaintiffs and the Collective Action and Class Members were all paid pursuant to the same corporate policies of Defendants, including failing to pay minimum wages, overtime premiums, and spread-of-hours premiums.

67.    Plaintiffs have spoken with other employees of Defendants who were similarly paid

below minimum wage for all hours worked. Defendants' failure to pay Plaintiffs minimum wages for all hours worked is a corporate policy of Defendants which applies to all of their non-management employees throughout the Class Period.

68.     Plaintiffs have spoken with other employees of Defendants who were similarly paid an hourly rate, which did not include overtime premium compensation for hours worked in excess of forty (40) in a given workweek. Defendants' failure to pay Plaintiffs overtime compensation of one and one-half (1.5) times their regular hourly rate for hours over forty (40) each week is a corporate policy of Defendants which applies to non-management employees throughout the Class Period.

69.     Defendants' failure to pay Plaintiffs spread-of-hours premiums for days in which Plaintiffs have worked a spread of more than ten (10) hours or a split shift has been a corporate policy which applies to all of their non-management employees who worked more than ten (10) hours in a day and/or a split shift throughout the Class Period.

70.     Defendants have not provided Plaintiffs or Class Members with wage notices at the time of hire or by February 1 of each year.

71.     Throughout the Class Period and, upon information and belief, continuing until today, Defendants have likewise employed other individuals like Plaintiffs in positions that require little skill and no capital investment.  Upon information and belief, such individuals were required to work for less than minimum wage and were not paid time and one-half when working in excess of forty (40) hours per week.

72.     Additionally, such individuals were not provided spread-of-hours premiums while working shifts in excess of ten (10) hours, nor were they provided with proper wage statements

and wage notices at hiring, by February 1 of each year, or proper wage statements with their wage payments on a weekly basis.

73.    Upon information and belief, throughout the Class Period and continuing until today, defendants failed to maintain accurate and sufficient time and payroll records or provide such records to employees.

## FIRST CAUSE OF ACTION
## FAIR LABOR STANDARDS ACT – UNPAID MINIMUM WAGE
**(Brought on Behalf of Plaintiffs and the Collective Action Members)**

74.    Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

75.    By failing to pay minimum wage for all hours worked, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 206 and 215(a)(2).

76.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

77.    Defendants' failure to pay minimum wages for all hours worked caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon.  By failing to pay Plaintiffs and the Collective Action Members the tipped minimum wage for all hours worked, Defendants lose the ability to utilize a tip credit against the FLSA's minimum wage.  Therefore, Plaintiffs and the Collective Action Members are entitled to recover from Defendants their full unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated

damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
## FAIR LABOR STANDARDS ACT – UNPAID OVERTIME
**(Brought on Behalf of Plaintiffs and the Collective Action Members)**

78.     Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

79.     By failing to pay overtime at a rate not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

80.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

81.     Defendants' failure to pay overtime caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## THIRD CAUSE OF ACTION
## NEW YORK LABOR LAW – UNPAID MINIMUM WAGE
### (Brought on Behalf of Plaintiffs and the Class Members)

82.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

83.     Defendants willfully violated Plaintiffs' and Class Members' rights by failing to pay minimum wage for all hours worked, in violation of the NYLL and regulations promulgated thereunder.

84.     Defendants' failure to pay minimum wage for all hours worked caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon. Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

## FOURTH CAUSE OF ACTION
## NEW YORK LABOR LAW – UNPAID OVERTIME
### (Brought on Behalf of Plaintiffs and the Class Members)

85.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

86.     Defendants willfully violated Plaintiffs and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half (1.5) times the regular rate of pay for hours worked in excess of 40 each week, in violation of the NYLL and regulations promulgated thereunder.

19

87. Defendants' failure to pay overtime premium compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon. Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FIFTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID SPREAD-OF-HOURS**
**(Brought on Behalf of Plaintiffs and the Class Members)**

88. Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

89. Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay compensation in an amount equal to one hour's pay at the relevant minimum wage in all instances where the Class Members worked either a split shift or more than ten (10) hours per day, in violation of the NYLL §§ 650, *et seq.*, and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. tit. 12, §§ 137-1.7 (2010), 146-1.6 (2012).

90. Defendants' failure to pay spread-of-hours compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon. Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid spread-of-hours compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**SIXTH CAUSE OF ACTION**
<u>**NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE NOTICES**</u>
**(Brought on Behalf of Plaintiffs and the Class Members)**

91.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

92.     Defendants have willfully failed to supply Plaintiffs and the Class Members notice as required by Article 6, § 195, in English or in the language identified by Plaintiffs and the Class Members as their primary language, containing Plaintiffs' and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay, if applicable;  the regular pay day designated by the employer in accordance with the NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer' the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

93.     Due to Defendant's violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendant fifty dollars ($50) per employee for each workweek that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per employee, as provided for by NYLL, Article 6, §§ 190, *et seq*., liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## SEVENTH CAUSE OF ACTION
## NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE STATEMENTS
### (Brought on Behalf of Plaintiffs and the Class Members)

94.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

95.     Defendants have willfully failed to supply Plaintiffs and Class Members with an accurate statement of wages as required by NYLL, Article 6, § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

96.     Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants two hundred and fifty dollars ($250.00) per employee for each workweek that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## EIGHTH CAUSE OF ACTION
## NEW YORK LABOR LAW – UNLAWFUL WITHHOLDING OF GRATUITIES
### (Brought on Behalf of Plaintiffs and the Class Members)

97.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

98.    Defendants have willfully failed to compensate Plaintiffs and the Class Members for all gratuities earned by withholding and retaining approximately fifty percent (50%) of the tips left by the customers for the Plaintiffs and Class Members, in violation of § 196-d of the New York Labor Law. Accordingly, Defendants are required to compensate Plaintiffs and the Class Members for all gratuities withheld by Defendants.

99.    Due to the Defendants' New York Labor Law violations, Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid gratuities, damages for unreasonably delayed payment of wages liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et al.*, 196-d.

### PRAYER FOR RELIEF

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Collective Action Members and Class Members, respectfully requests that this Court grant the following relief:

a.    Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action

by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

b.    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiffs and their counsel to represent the Class;

c.    An order tolling the statute of limitations;

d.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

e.    An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.    An award of compensatory damages as a result of Defendants' failure to pay minimum wage and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.    An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay minimum wages and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

h.    An award of actual and liquidated damages for the non-payment of spread-of-hours pay for each split shift and/or shift worked in New York in excess of ten hours;

i.    An award of damages arising out of the unlawfully-withheld gratuities under the NYLL;

j.     Fifty dollars ($50.00) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL, Article 6 § 195 occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-b;

k.     Two hundred and fifty dollars ($250.00) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL, Article 6 § 195 occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-d;

l.     An award of prejudgment and post-judgment interest;

m.     An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

n.     Such other and further relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
       August 24, 2018

                     **PELTON GRAHAM LLC**

                     By: _____
                     Brent E. Pelton (BP 1055)
                     pelton@peltongraham.com
                     Taylor B. Graham (TG 9607)
                     graham@peltongraham.com

111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiffs and the putative*
*FLSA Collective and Class*

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Sherwood Diner, and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.


_____          _____
Signature                                               Loretta Leon
                                                                Printed Name

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Sherwood Diner, and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me minimum wages and overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.


_____          _____
          Signature                                Printed Name

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Sherwood Diner, and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me minimum wages and overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_____
Signature

_____
Printed Name